IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

 vs.                                                     CIVIL NO. 08-946 JEC/LFG
                                                              CRIM. NO. 05-246 JEC

RAMON CAMPOS-GUEL,

    Defendant-Movant.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

    1.  This is a proceeding on a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. Defendant-Movant Ramon Campos-Guel ("Campos-Guel") attacks the judgment and sentence entered by the United States District Court for the District of New Mexico in <u>United States v. Campos-Guel</u>, No. CR 05-246 JEC.

## Background

    2.  On October 19, 2004, a criminal complaint was filed against Campos-Guel, charging him with illegally entering the United States following deportation after conviction of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a)(1), (2) and (b)(2) [Doc. 1 in CR 05-246 JEC].[2]

---

    [1]Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

    [2]Further references herein to documents in <u>United States v. Campos-Guel</u>, CR 05-246 JEC will be in the format, "CR Doc. __." References to documents filed in Civ. 08-946 JEC/LFG, the civil action under Section 2255, will be referred to simply as "Doc. __."

3. At a detention hearing on October 25, 2004, Campos-Guel waived his right to a preliminary hearing and waived his right to grand jury presentment for 75 days beyond the 30-day statutory period of the Speedy Trial Act,[3] thereby giving the government 105 days within which to present the case to the grand jury. [CR Docs. 5, 7, 9]. On February 3, 2005, no indictment having been returned, Campos-Guel filed a motion to dismiss the criminal complaint for failure to timely present the case to a grand jury. [CR Doc. 10].

4. On February 8, 2005, the grand jury returned an indictment against Campos-Guel, charging him with the offense of Re-entry of Deported Alien Previously Convicted of an Aggravated Felony, the same offense charged in the criminal complaint. [CR Doc. 11]. The government concedes that the indictment was filed beyond the statutory deadline as extended by the parties' agreement and approved by the Court, but notes that the delay was brief – one week – and was caused by inadvertence. [Doc. 3, at 7].

5. At his arraignment on February 15, 2005, Campos-Guel pled not guilty. On that same date, the undersigned Magistrate Judge entered an order finding that Campos-Guel's motion to dismiss was moot in that an indictment had by that time been filed. [CR Doc. 13]. Campos-Guel did not challenge this ruling by petitioning for review by the District Judge, and the case proceeded to trial after several continuances.

6. Trial was originally set for April 12, 2005. [CR Doc. 18]. On April 4, 2005, the government, with Campos-Guel's concurrence, moved to continue the trial; the motion was granted on April 8, 2005. [CR Docs. 19, 20].

---

[3] 18 U.S.C. § 3161(b) ("Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges").

7. On April 14, 2005, Campos-Guel's attorney, Alonzo J. Padilla, moved to withdraw as counsel, citing as reasons a breakdown in the attorney-client relationship. [CR Doc. 21]. The motion was granted, and substitute counsel Floyd W. Lopez was appointed on April 18. [CR Docs. 22, 24].

8. Between April 14, 2005 and April 10, 2006, eight motions to continue trial were filed and granted. [CR Docs. 25, 27, 31, 33, 39, 42, 45, 48]. Five of these motions were filed by Campos-Guel; two were joint motions by both sides and one was filed by the government with the concurrence of the defense.

9. On April 25, 2006, attorney Lopez filed a motion to withdraw as counsel, citing deterioration of the attorney-client relationship. [CR Doc. 52]. On that same date, the defense filed another motion to continue trial, the tenth request for continuance. Both motions were granted, and on April 25, 2006, attorney Serapio Jaramillo was appointed to represent Campos-Guel. [CR Doc. 55].

10. The case proceeded to trial on July 18, 2006. The jury returned a verdict of guilty. On September 27, 2006, Campos-Guel was sentenced to 125 months. [CR Doc. 78]. On appeal, Campos-Guel was represented by new counsel, Nancy L. Simmons. [CR Doc. 82]. His conviction was affirmed by the Court of Appeals for the Tenth Circuit on August 14, 2007. [CR Doc. 88]; United States v. Campos-Guel, No. 06-2298, 245 F. App'x 743, 2007 WL 2309773 (Aug. 14, 2007).

11. On July 21, 2008, Campos-Guel filed a document entitled "Special and Limited Entry of Appearance Special Pleading Special Plea in Bar Coram No Judice and Void Ab Initio" [CR Doc. 96]. He filed the instant Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 on October 14, 2008. [Doc. 1].

12. In his § 2255 Motion, Campos-Guel raises the following claims:

3

> CLAIM ONE: His speedy trial rights were violated in that the indictment was delayed beyond the allowable time; thus, his conviction was null and void because the government lost jurisdiction to prosecute him.
>
> CLAIM TWO: He did not receive effective assistance of counsel, in that his attorneys failed to petition for review of the Magistrate Judge's ruling denying his motion to dismiss.
>
> CLAIM THREE: The government waived its right to prosecute him by violating the Speedy Trial Act "and other natural universal principals [sic] of time limits and rules on jurisdiction."
>
> CLAIM FOUR: The Court and the government waived jurisdiction by not responding to his "commercial affidavit filed as special and limited entry of appearance."

## Discussion

### Claim One and Claim Three

13. Campos-Guel alleges in Claim One that his speedy trial rights[4] were violated in that the indictment was delayed beyond the allowable time, and thus the conviction was null and void because the government lost jurisdiction to prosecute him. Similarly, he alleges in Claim Three that the government waived its right to prosecute him by violating the Speedy Trial Act and "other natural universal principals [sic] of time limits."

14. The government contends that the issue raised in Claims One and Three was decided in Campos-Guel's direct appeal and cannot therefore be re-visited in a § 2255 proceeding. However, the issue raised and decided on direct appeal was the alleged lack of authority of the Magistrate Judge to decide the motion to dismiss. The Tenth Circuit held that, because Campos-Guel neither raised this issue with the Magistrate Judge nor sought review by the District Judge, he forfeited his

---

[4] In Claim One, Campos-Guel does not state whether he is referring to his rights under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, or to his constitutional right to a speedy trial.

right to bring the matter up in his appeal to the Tenth Circuit. United States v. Campos -Guel, *supra*, 245 Fed. Appx. at 745.

15. While Campos-Guel attempted in his direct appeal to challenge the Magistrate Judge's authority to make the ruling on his motion to dismiss, he did not challenge the Magistrate Judge's substantive ruling that the motion was mooted by the indictment, presumably because the ruling was never appealed to the District Judge. In any event, the failure to raise a claim on direct appeal bars the petitioner from raising that claim in a § 2255 proceeding, absent a showing of cause and prejudice. Massaro v. United States, 538 U.S. 500, 504 (2003). Thus, because he did not appeal the Magistrate Judge's ruling to the District Judge and did not raise the issue in the Court of Appeals, Campos-Guel's claims of violations of his speedy trial rights, as set forth in Claims One and Three, are not cognizable in this proceeding as independent claims.

## Claim Two

16. However, in Claim Two, Campos-Guel alleges that his attorneys were constitutionally ineffective in failing to pursue his right to dismissal based on a speedy trial violation. This claim is cognizable in a § 2255 proceeding. Massaro, *supra*, at 504.

17. To succeed on a claim of ineffective assistance, Campos-Guel must make a two-pronged showing: (1) that counsel's performance was constitutionally defective; and (2) that the deficient performance prejudiced the defense in that counsel's errors were so serious as to deprive the defendant of a fair trial with a reliable result. Strickland v. Washington, 466 U.S. 668, 687 (1984).

18. To prove deficient performance, Campos-Guel must overcome the presumption that counsel's conduct was constitutionally effective. Duvall v. Reynolds, 139 F.3d 768, 777 (10th Cir. 1998). Scrutiny of counsel's performance must be highly deferential and must avoid the distorting

effects of hindsight. Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir. 1995). To prove that counsel's performance was prejudicial to his defense, Campos-Guel must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, at 694. The court may address the performance and prejudice components in any order and need not address both if the petitioner fails to make the requisite showing for one of the elements. Id., at 697.

19. The Court finds that Campos-Guel failed to demonstrate that he was prejudiced by his attorneys' actions and thus cannot prevail on a claim of ineffective assistance.

20. As noted above, the government acknowledges that the indictment was not returned until after expiration of the statutory period, as extended. [Doc. 3, at 7: "The government inadvertently delayed presenting the case to a grand jury for only one week . . . ."]. Campos-Guel's attorneys would therefore have had grounds for pursuing a speedy trial violation. However, Campos-Guel has not shown that a reasonable attorney would have done so, as such a course would have achieved no tangible benefit and would have caused further delay.

21. The Speedy Trial Act provides that, following a complaint charging an individual with an offense, if an indictment is not filed within the time limitations set forth in 18 U.S.C. § 3161(b) as extended by § 3161(h),

> such charge against that individual contained in such complaint shall be dismissed or otherwise dropped. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. § 3162(a)(1).

22.  The provision of § 3162 is mandatory, United States v. Taylor, 487 U.S. 326, 332 (1988), requiring dismissal of the complaint when the Act is violated.  United States v. Saltzman, 984 F.2d 1087, 1092 (10th Cir. 1993).  In this case, however, had Campos-Guel's attorneys asked the District Judge to review the Magistrate Judge's ruling, the best result that Campos-Guel could have achieved would have been dismissal of the complaint without prejudice, thus allowing reprosecution.

23.  An analysis of the statutory factors, which the Court is directed to apply in deciding whether to dismiss with or without prejudice, compels this conclusion.

24.  The first factor is the seriousness of the offense; if the offense is found to be serious, this factor weighs in favor of dismissal without prejudice.  Saltzman, at 1092-93.  There is no question that the District Judge would have found "serious" the offense involved in this case, a felony carrying a potential sentence of 20 years imprisonment.  8 U.S.C. § 1326(b)(2).

25.  "When the charges are serious, courts should impose the sanction of dismissal with prejudice only for a correspondingly serious delay, especially in the absence of a showing of prejudice."  Saltzman, at 1093, *quoting* United States v. May, 819 F.2d 531, 534 (5th Cir. 1987).  Campos-Guel has shown no prejudice arising from the one-week period of delay in this case, and the brief delay is not "correspondingly serious" when compared with the seriousness of the offense at issue herein.

26.  The Court must next consider the facts and circumstances surrounding the delay, "focus[ing] on the culpability of the delay-producing conduct . . . .  Where the delay is the result of intentional dilatory conduct, or a pattern of neglect on the part of the Government, dismissal with prejudice is the appropriate remedy."  Saltzman, at 1093-94 (internal punctuation omitted).  In this

case, the government contends that the one-week delay in obtaining the indictment in this case was merely inadvertent.  There is nothing on the record to contradict this assertion.  Specifically, there is nothing to indicate that the government delayed the indictment in order to gain an advantage in the prosecution; indeed, Campos-Guel makes no such assertion.

27.  Finally, the Court is to consider the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice.  "The right to a speedy indictment belongs to both the defendant and society . . . . [There is a] public interest in speedy justice."  Saltzman, at 1091.  There is nothing in the record of this case to demonstrate that a reprosecution following dismissal without prejudice would have had an adverse impact on the administration of justice, or on the rights of the public or the defendant.

28.  Five days after Campos-Guel raised the Speedy Trial Act issue in his motion to dismiss and seven days after the period expired, an indictment was handed down after the government presented its case to the grand jury.  While it may have taken the filing of a motion to dismiss to alert the government to its inadvertence, the motion itself was filed only a few days after the period expired, and the government acted swiftly thereafter to present the case to the grand jury.

29.  The record in this case compels the conclusion that, if the Magistrate Judge's ruling had been overturned by the District Judge, the complaint would have been dismissed without prejudice and the government would have proceeded to prosecute the case anew.  While there would have been some delay involved in such a reprosecution, the Court thereafter granted the parties' numerous requests for continuance, finding no adverse impact on the interests of the parties or the public in permitting some delay of the proceedings.

30. While Campos-Guel focuses on his statutory speedy trial rights, it is further clear that his attorneys could not have argued successfully to the District Judge that Campos-Guel's constitutional right to a speedy indictment was violated. The Supreme Court has held that the Due Process Clause of the Fifth Amendment provides protection against pre-indictment delay. United States v. Marion, 404 U.S. 307, 324 (1971). Such a claim, however, requires that the defendant show both actual prejudice to the defense, as well as intentional delay by the government for the purpose of tactical advantage or harassment. United States v. Colonna, 360 F.3d 1169, 1176-77 (10th Cir. 2004).

31. A vague and conclusory allegation of prejudice resulting from the passage of time is not sufficient to demonstrate the "actual prejudice" required for constitutional relief. Id., at 1177. In this case, Campos-Guel has made no allegation of prejudice whatsoever. In addition, he does not allege nor demonstrate that the government's purpose in delaying the indictment for one week was done intentionally, in order to harass him or to gain a tactical advantage. Thus, an appeal to the District Judge based on an allegation of constitutional violation could not have succeeded, and there was no ineffective assistance of counsel in failing to make such an appeal.

32. The Court rejects Campos-Guel's claim of ineffective assistance of counsel, due to his failure to establish the "prejudice" prong of the Strickland test.

### Claim Four

33. Finally, in Claim Four, Campos-Guel states as follows: "The court and prosecutor have not responded to commercial affidavit filed as a special and limited entry of appearance, therefore the Affidavit is extrinic [sic] evidence that jurisdiction was given up and the time limited [sic] exceeded, it is clear that the court and prosecutor agree." [Doc. 1, at 8].

34. Campos-Guel appears to be referring to the document he filed on July 21, 2008 in CR 05-246 JEC, which he titled "Commercial Affidavit - 1. - Special and Limited Entry of Appearance." [CR Doc. 96]. While Campos-Guel may have intended this document to be a habeas petition under 28 U.S.C. § 2255, such intention is not apparent on the face of the document.

35. Rule 2 of the Rules Governing § 2255 Proceedings in the United States District Court, provides as follows:

> **(a) Applying for Relief.** The application must be in the form of a motion to vacate, set aside, or correct the sentence.
>
> **(b) Form.** The motion must:
>
>> **(1)** specify all the grounds for relief available to the moving party;
>> **(2)** state the facts supporting each ground;
>> **(3)** state the relief requested;
>> **(4)** be printed, typewritten, or legibly handwritten; and
>> **(5)** be signed under penalty of perjury by the movant or by a person authorized to sign it for the movant.
>
> **(c) Standard Form.** The motion must substantially follow either the form appended to these rules or a form prescribed by a local district-court rule. The clerk must make forms available to moving parties without charge.

36. The Affidavit filed by Campos-Guel is not denoted as a Motion to Vacate, Set Aside or Correct Sentence under § 2255. In it, he does not clearly specify grounds for relief nor clearly state the relief requested. Much of the document is incomprehensible and appears unrelated to any request for habeas relief.

37. The Court rejects Campos-Guel's assertion that the fact that the government did not file a response to this "Commercial Affidavit" constitutes "extrinic [sic] evidence that jurisdiction was

given up and the time limited [sic] exceeded, [and] it is clear that the court and prosecutor agree." [Doc. 1, at 8]. Even if Campos-Guel considered the "Commercial Affidavit" to constitute a Motion under § 2255, the government is not required to respond to such a Motion until ordered to do so by the Court. Rule 4(b), Rules Governing Section 2255 Proceedings. The Court did not order the government to respond to this document. The government's failure to respond, therefore, cannot be construed as any sort of concession of lack of jurisdiction.

     38. Furthermore, the document was not in the proper form for a § 2255 Motion and did not alert the Court that any particular action was requested by Campos-Guel. There is no merit to Campos-Guel's argument that any asserted failure by the Court to respond in some unspecified manner to his "Commercial Affidavit" serves to deprive the Court of jurisdiction over the earlier criminal proceedings and to render the conviction null and void.

### Recommended Disposition

That the Motion to Vacate, Set Aside, or Correct Sentence be denied and the case be dismissed with prejudice.

                                    *Lorenzo F. Garcia*
                                    Lorenzo F. Garcia
                                    Chief United States Magistrate Judge